

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **CALVIN GARY WALKER, *et al.*,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:15-CV-379** |
| | § | |
| **BEAUMONT INDEPENDENT SCHOOL** | § | |
| **DISTRICT, *et al.*,** | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION RE: BISD MOTIONS TO DISMISS**

In accordance with 28 U.S.C. § 636 and the Local Rules for the United States District Court for the Eastern District of Texas, on October 15, 2015, the District Court referred this matter to the undersigned United States Magistrate Judge for pretrial management. *See Order* (doc. #55). Pending before the Court for the purposes of this report are the following motions:

1. *Defendants Neil and Neild's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted* (doc. #64);

2. *Beaumont Independent School District's Motion to Dismiss Individual BISD Defendants Pursuant to the Texas Tort Claims Act Election of Remedies Provision* (doc. #66);

3. *Beaumont Independent School District Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint* (doc. #102); and

4.      *Defendant Mike Neil's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted* (doc. #198).

## I.      Background

Plaintiffs Calvin Gary Walker ("Walker"), Walkers Electric, and Walker's Electric originally filed suit on July 16, 2015, in the United States District Court for the Eastern District of Texas, Marshall Division. They and Jessie Haynes ("Haynes") (collectively, "Plaintiffs") amended their complaint twice more before the Marshall Division transferred the case to the Beaumont Division on October 2, 2015. After the transfer, Plaintiffs were again granted leave to amend, and their *Third Amended Complaint* (doc. #79) was deemed filed on September 28, 2015. On December 22, 2015, Plaintiffs filed their present complaint, the *Fourth Amended Complaint* (doc. #144). Additionally, on February 23, 2016, this case was consolidated with a related case, *Haynes v. Crenshaw* (civ. action no. 1:15-CV-437). *See Order on Consolidation* (doc. #181).

Plaintiffs assert that they are the victims of an extensive, long-lasting conspiracy designed to prevent African-American individuals in Beaumont from gaining power and influence in order to perpetuate white dominion over Beaumont local politics. This alleged conspiracy, spanning approximately a decade, reportedly involved approximately 35 residents and organizations in the Beaumont area, including the Beaumont Independent School District ("BISD"), the BISD Board of Trustees and subsequent Board of Managers, two local newspapers and their employees, two online journalists, the local chapter of the International Brotherhood of Electrical Workers ("IBEW 479") and several of its members, the IBEW itself, a Beaumont city councilman, two local attorneys, the United States Attorney for the Eastern District of Texas, two Assistant United States Attorneys, and two agents with the Federal Bureau of Investigation ("FBI"). The objective

of this alleged conspiracy was to ruin Plaintiffs' reputations and businesses as part of a larger campaign to harm minority individuals who "stepped out of line" and "defied the status quo."

Walker is a master electrician and owner of Walker's Electric Company, which offers electrical services in Beaumont. The defendants whose motions are at issue for this report and recommendation are Beaumont Independent School District ("BISD"); BISD's Director of Contracts/Contract Supervisor, Aaron Covington ("Covington"); two of BISD's Chief Financial Officers, Leroy Saleme ("Saleme") and Jane Kingsley ("Kingsley"); BISD's former Superintendent, Vernon Butler ("Butler"); BISD employee Terry Ingram ("Ingram"); two members of BISD's former Board of Trustees, Michael Neil ("Neil") and Tom Neild ("Neild"); and seven members of BISD's Board of Managers, Vernice Monroe ("Monroe")[1], A.B. Bernard ("Bernard"), Jimmy Simmons ("Simmons"), Robert Turner ("Turner"), Joe Domino ("Domino"), Lenny Cabarello ("Cabarello"), and Jack Carroll ("Carroll") (collectively "BISD Defendants"). Finally, Haynes is BISD's former Communications Director.

Plaintiffs maintain that the conspiracy against them began in 2004, when members of IBEW 479 asked Walker to join the union and he refused, at which point he was told that the union would "get him one way or another." Walker then contracted to provide electrical services to BISD, a position that had previously been held by a member of IBEW 479. In April 2008, another IBEW 479 member filed a complaint against Walker with the Texas Department of Licensing and Registration ("TDLR"), asserting that Walker had obtained his electrician's license through fraud. Although Walker initially contested the matter and continues to claim that the

---

[1] BISD has clarified that, while Monroe was sued as "Venice Monroe," his first name is actually "Vernice."

IBEW and IBEW 479 were behind and heavily involved with the investigation (in retaliation for his refusal to join their ranks), Walker ultimately agreed to pay a fine, relinquish his Master Electrician's license, and retake the required licensing exam.

Events involving BISD began two years prior to the TDLR investigation, in 2006. According to Plaintiffs, Ingram and other unnamed individuals at BISD Executive Cabinet meetings began complaining about Walker on a regular basis, commenting that he was making too much money (for an African American) and was a sloppy businessman. During this time period, Kingsley produced detailed spreadsheets about Walker to present to the Executive Cabinet meetings. In 2008, Kingsley, acting on behalf of BISD, purportedly attempted to ensure that Walker's contract with BISD was not renewed by improperly conducting the bid process. Additionally, BISD allegedly imposed onerous record-keeping requirements upon him. The bid process was redone, however, and Walker continued to work on BISD projects.

Having failed to prevent Walker from contracting with BISD, IBEW, IBEW 479, and BISD allegedly turned to Malcolm Bales ("Bales"), the United States Attorney for the Eastern District of Texas, to get Walker indicted on 37 counts of fraud in May 2011.[2] In addition, Walker claims that FBI agents involved in his prosecution tampered with potential witnesses during his trial, offering bribes to one and threatening two others. Members of the United States Attorney's Office also allegedly leaked information about Walker's case to BISD and the IBEW. Walker was tried on these counts in December 2011, which resulted in a mistrial. Walker subsequently pleaded guilty to one count of willful failure to pay income taxes. He maintains that members of the conspiracy relentlessly smeared him in the media by wrongfully stating that he had pleaded guilty

---

[2] Bales was previously a defendant in this case, but the claims against him have been dismissed.

to defrauding BISD and that he had agreed to repay BISD for the money that he had stolen. According to Walker, although the records of BISD contained altered documents, there was no evidence admitted at trial that Walker or his wife submitted these documents to BISD in connection with receiving payments for various projects. In addition, Walker alleges that the Assistant United States attorney assigned to the case urged BISD to cease doing business with Walker and sent letters to a number of government entities and individuals, falsely informing them that Walker was a thief.

Walker complains that members of the conspiracy continued to engage in a smear campaign against him and that BISD board members and other conspirators repeatedly stated that Walker had admitted to submitting fraudulent invoices. Specifically regarding the BISD Defendants, Walker says that Neil and Neild called Walker a crook and a thief during Board of Trustees meetings and said that he had been found guilty of defrauding BISD, among a number of other comments. Walker further contends that members of the conspiracy joined with their allies at *The Examiner*, *The Beaumont Enterprise*, and two websites to spread these allegedly unfounded allegations. Neil was quoted in several of the articles included in the complaint.

Additionally, Walker alleges that BISD improperly terminated his contract. He further claims that he was prevented from being awarded another BISD contract and that he has lost substantial business from other prospective clients because the district's "Evaluation Matrix" contained false information that he admitted to padding BISD invoices, along with other purported falsehoods. Saleme, Covington, and Butler were responsible for creating the Evaluation Matrix.

Haynes asserts that she, too, was victimized by the alleged conspiracy when Neil moved her away from a door leading to a press conference at BISD after Haynes prevented Defendant

Jerry Jordan ("Jordan"), owner of SETinvestigates.com, from entering the press conference. Haynes was subsequently convicted of obstruction of a public passageway, and the conviction has been affirmed on appeal. Neil testified at her trial, along with several other defendants. Haynes then claims that the conspirators "engaged in a concerted campaign to harass [her], tarnish her reputation, attack her integrity, and threats of [sic] criminal and/or administrative repercussions." Included in the campaign was Neil's attendance at an incident where individuals marched down BISD's hallways chanting "Fire Jessie [Haynes] now," and responding "lol" to an online comment about Haynes' criminal conviction. Unnamed members of the conspiracy also purportedly attacked a book Haynes wrote, called *Ten Stupid Things College Kids Do*. Finally, Haynes asserts that Neil was involved in a verbal altercation in a parking lot with two of Haynes' supporters.

Walker has alleged the following claims against BISD and the BISD Defendants: defamation, tortious interference with existing contract, tortious interference with prospective contract, a § 1983 equal protection claim, civil conspiracy, substantive violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and RICO conspiracy. Walker has further asserted a breach of contract claim against BISD. Haynes has alleged a RICO conspiracy against BISD and the BISD Defendants, as well as substantive claims of RICO racketeering and civil assault against Neil. Plaintiffs sued all individual BISD Defendants in both their official and individual capacities for all claims. The Court further ordered Plaintiffs to submit further briefing on the issue of qualified immunity, to which Plaintiffs responded on July 19, 2016.

## II.     Discussion

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *accord Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014); *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377 (citations omitted)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001) (citing *Kokkonen*, 511 U.S. at 377).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). In considering such a motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 133 S. Ct. 32 (2012).

However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord In re La. Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Nonetheless, "a motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

The Court generally may not look beyond the four corners of the plaintiff's pleadings. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 133 S. Ct. 32 (2012); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 241 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1561 (2012). The limitations defense must be clear on the face of the complaint. *See Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

A.    Federal Claims

1.    RICO Racketeering

Walker has filed two substantive RICO claims: a claim against BISD, the IBEW, and "IBEW Agents" under 18 U.S.C. § 1962(a) and a claim under 18 U.S.C. § 1962(c) against both "IBEW Agents" and "BISD Agents." Additionally, Walker has asserted a RICO conspiracy claim

under 18 U.S.C. § 1962(d) against "Members of the Conspiracy," which is defined to include all of the defendants in the case. Likewise, Haynes has asserted a RICO conspiracy claim against all "Members of the Conspiracy" and a substantive RICO claim under § 1962(c) against Neil.

Regarding Plaintiffs' RICO claims against BISD, BISD alleges that it must be dismissed because a school district is not a proper RICO defendant. Plaintiffs do not respond to this argument. The Fifth Circuit, however, held in *Gil Ramirez Group, L.L.C.* that school districts are not proper defendants under RICO because, as governmental entities, they lack the ability to form the required *mens rea* and, like municipal entities, they have common-law immunity from punitive damages. 786 F.3d 400, 411-12 (5th Cir. 2015) (analyzing the issue in detail and citing a number of supporting cases). Plaintiffs have not offered the Court any reason that this holding should not apply here. Accordingly, Plaintiffs' RICO claims against BISD must be dismissed with prejudice.

The individual BISD Defendants assert that Plaintiffs' RICO claims against them under § 1962(c) must be dismissed for failure to plead (1) a pattern of racketeering activity; (2) an enterprise; or (3) an injury proximately caused by racketeering activity. Moreover, they allege that Walker's claims under § 1962(a) must be dismissed for failure to plead (1) a receipt of income from racketeering activity; (2) the use or investment of such income by the enterprise; and (3) an injury flowing from such an investment.

To allege a violation under § 1962(a), a plaintiff must show (1) the existence of an enterprise, (2) the defendant's derivation of income from a pattern of racketeering activity, and (3) the use of any part of that income in acquiring an interest in or operating the enterprise. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015). To

9

state a claim of RICO racketeering under 18 U.S.C. § 1962(c), a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern of racketeering activity. *Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139-40 (5th Cir. 1992). "Each concept is a term of art which carries its own inherent requirements of particularity." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989); *see Andrews v. Am. Nat'l Red Cross, Inc.*, 176 F. Supp. 2d 673, 685 (W.D. Tex. 2001), *aff'd*, 44 F.App'x 651 (5th Cir. 2002).

To establish an enterprise, a plaintiff must plead the existence of an entity separate and apart from the pattern of racketeering activity. *United States v. Turkette*, 452 U.S. 576, 583 (1981). The entity does not have to be a formal or legal entity, but it must have some sort of hierarchical or consensual decision-making structure, and it must exist for purposes other than just to commit predicate acts. *In re McCann*, 268 F. App'x 359, 366 (5th Cir. 2008); *United States v. Blesdoe*, 674 F.2d 647, 663 (8th Cir. 1982). A plaintiff establishes the existence of an enterprise by providing "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583. For an informal enterprise, known as an association-in-fact enterprise, the "group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." *Boyle v. United States*, 556 U.S. 938, 948 (2009). "Members of the group need not have fixed roles; different members may perform different roles at different times . . . ." *Id.* Further, "while the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity.'" *Id.* Plaintiffs must "plead specific facts, not mere conclusory allegations which establish the

enterprise." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988). "[A] RICO plaintiff must plead the specified facts as to each defendant. It cannot . . . 'lump[ ] together the defendants.'" *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1988)).

Further, unlike previous defendants, Walker has asserted substantive RICO claims directly against the BISD Defendants. As such, under § 1962(c), he must also plead that they "participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court has clarified that this provision means that "in order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). This requires that a defendant "participate in the operation or management of the enterprise itself." *Id.* Additionally, "'outsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise and participate in the conduct of *its* affairs—that is, participate in the operation or management of the enterprise itself . . . ." *Id.*

Turning to the complaint, Walker's pleading of the enterprise element of RICO racketeering under § 1962(a) is extraordinarily vague. He alleges, "IBEW Agents, independently and in conjunction with individuals employed by BISD and serving on the BISD Board of Trustee[s] and Board of Managers, operated as an enterprise as that term is defined by RICO and case law (the Enterprise)." Similarly, for his claim under § 1962(c), he pleads only, "BISD Agents engaged in an enterprise to further racketeering with IBEW Agents and independently." Walker argues that the complaint pleads facts to show that Reaud directed the enterprise, Neil

acted as "enforcer," Neild acted as an official "voice" of BISD, Defendant Michael Getz ("Getz")[3] was "planted in the audience to echo otherwise unfounded accusations against Mr. Walker," Crenshaw gave the conspiracy "gravitas," and various news outlets were tasked with spreading false statements about Walker. None of these assertions are supported by the *Fourth Amended Complaint*.[4] Additionally, with the exception of Neil and Neild, Walker has never explained how the individual BISD Defendants purportedly participated in the enterprise. For these reasons, the Court recommends that Walker's claims under § 1962(a) and (c) be dismissed.

The BISD Defendants also assert that Walker has not pleaded a pattern of racketeering activity sufficient to support either of his RICO claims. To prove a pattern of racketeering activity, "a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139 (citing 18 U.S.C. § 1961(5); *H.J., Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). Section 1961(1) provides the exclusive list of acts that constitute RICO predicate acts. 18 U.S.C. § 1961(1); *Zastrow v. Houston Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).

---

[3] Getz was a former defendant in the case, but the claims against him have been dismissed.

[4] Walker's pleading that Reaud (who has already been dismissed from this case) is a ringleader of a RICO enterprise is wholly conclusory, comprised of the following statement and devoid of any factual basis:

> Defendant Reaud is one of the ring leaders of the Conspiracy and of the enterprise. He issues directions, instructions, orders, manages individuals and ensures that the enterprise's goal of marginalizing African-Americans in Beaumont is fulfilled. His leadership role included communications with members of the Conspiracy and agreeing to, allowing for, and ensuring implementation of the enterprise's goal to socially and financially destroy African American individuals such as Ms. Haynes and Walker.

As to Neil and Neild's reported roles as "enforcer" and "voice" of the enterprise, respectively, no such allegation appears in the complaint. Neither is there any factual basis through which to conclude that Getz was tasked with "echoing" the negative accusation against Walker or to harass Haynes and her supporters.

The plaintiff must also show that the predicate offenses asserted are related and amount to or pose a threat of continued criminal activity. *Zastrow*, 789 F.3d at 560 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). "To establish continuity, plaintiffs must prove 'continuity of racketeering activity, or its threat.'" *Id.* at 561 (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc.*, 492 U.S. at 241))). The Fifth Circuit has expressly held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown. *Id.* at 561 (quoting *Sawyer*, 90 F.3d at 123). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . ." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242) (holding that plaintiff failed to establish a pattern under RICO when all of the alleged witness intimidation and retaliation asserted occurred within one week and were directed at a single lawsuit and noting that the plaintiff "cannot credibly argue that obstructing justice is part of the defendants' regular way of doing business or that their purported attempts to intimidate him create a threat of long-term racketeering activity").

For his § 1962(a) claim, Walker asserts that the IBEW, along with IBEW 479 and its members, committed the following predicate acts: defamation, tortious interference with a prospective contract, tortious interference with a current contract, "interference with Mr. Walker's lawful business activities," actual or threatened extortion, witness tampering, and witness retaliation.[5] In his § 1962(c) claim, Walker avers that BISD agents "misused official information" in violation of two Texas statutes. Finally, for his § 1962(d) claim, Walker maintains that

---

[5] Walker does not plead that the BISD Defendants engaged in any of this activity, only that they were involved in the enterprise.

members of the conspiracy filed false claims with the TDLR, defamed him, tortiously interfered with his current contracts, tortiously interfered with his business, and "other actions described above," which he asserts in his response includes attempted bribery. Out of all of these acts, only extortion, witness tampering, witness retaliation, and attempted bribery, as listed in his § 1962(a) and (d) claims, are potentially RICO predicate acts.[6] Accordingly, his § 1962(c) claim should be dismissed for failure to plead a pattern of racketeering activity.

For his § 1961(a) claim, extortion under § 1961 means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951. Walker states that he was the victim of attempted extortion when he refused to join the union and two union members threatened that they "would get him one way or another." However, there is no indication that these members took or sought to take property from Walker or that he was induced to give consent to the taking of such property. Therefore, the Court is unable to find that Walker's extortion claim is properly pleaded, and, thus, it is not a predicate act under RICO.

Regarding witness tampering, Walker alleges that the IBEW scared a number of electricians "into saying things to harm him" during the TDLR investigation into the validity of Walker's master electrician's license. Such incidents cannot constitute RICO predicate acts as a matter of law because both the statutes concerning witness tampering and witness retaliation apply solely to federal proceedings, and the TDLR is a state agency in Texas. 18 U.S.C. §§ 1512,

---

[6] The filing of spurious complaints with a state agency and Walker's civil tort claims are not RICO predicate acts. As to the assertion of "official oppression" and "misusing official information," both claims are ordinarily misdemeanors under Texas law and do not involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, obscenity, or controlled substances. *See* TEX. PEN. CODE §§ 39.03, 39.06 (West 2015). Thus, they also are not RICO predicate acts. *See* 18 U.S.C. § 1961(1)(A).

1513.  Thus, factual allegations relating to tampering and retaliation regarding witnesses in that proceeding are not predicate acts under RICO.

Second, Walker asserts that witness tampering and retaliation occurred when FBI agent Deanna Stevens ("Deanna") convinced her ex-husband, Luke Stevens ("Luke"), not to inform Walker's defense counsel or the judge presiding over Walker's criminal trial about "leaks" allegedly coming from the United States Attorney's Office.  Walker has included an affidavit from Luke stating that Deanna threatened to take his children away and otherwise make him suffer if he came forward with information about the leaks.  Luke further wrote that, after he spoke with Defendant Assistant United States Attorney Bob Rawls about the leaks, the FBI allowed Deanna to work shorter hours and that she used the time to keep him away from his children.  This incident is sufficient to constitute an instance of witness tampering and retaliation for pleading purposes.

> Bribery is governed by 18 U.S.C. § 201(b)(3) and occurs when a person:
>
> directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom . . . .

18 U.S.C. § 201(b)(3).  Walker pleads that FBI agents Deanna and Timothy Brewer (both of whom are also named defendants in this case) offered to make James Brown's ("Brown") child support obligations "disappear" if Brown would testify against Walker.  Because Brown was allegedly promised a benefit in exchange for his testimony as a witness against Walker, the Court finds that this is a sufficiently pleaded instance of attempted bribery and witness tampering.

15

Therefore, in total, Walker has pleaded four possible predicate acts—alleged witness tampering and retaliation against Luke and the attempted bribery and witness tampering involving Brown. Walker has not, however, sufficiently pleaded that these acts constitute a "pattern." While Walker frames his complaint in the context of a decade-long conspiracy, all of the RICO predicate acts occurred during a relatively brief period of time in the context of Walker's criminal trial for fraud. Further, Walker's criminal prosecution ended with a plea agreement between Walker and the government. Walker has not asserted any facts to support an argument that there exists a threat of continuing criminal activity. Therefore, Walker has failed to plead a pattern of racketeering activity essential for his claim of RICO racketeering under 18 U.S.C. § 1962(a).

Similarly, Haynes asserts the following predicate acts in support of her RICO racketeering claim under § 1962(c): threats, coercion, assault, witness tampering, "victim tampering," and "informant tampering." She also asserts that members of the conspiracy harassed her, tarnished her reputation, and threatened her with criminal and administrative repercussions. For her RICO conspiracy claim she lists interfering with her ability to prosecute Neil for assault, Neil's assault against her, deprivation of her due process rights by "tampering with her representation, witnesses, informants, evidence, and with the judicial process." None of these actions are RICO predicate acts under 18 U.S.C. § 1961. Further, because Plaintiffs' response and filings in this case make it apparent that Haynes relies on the same factual basis as Walker to plead the existence of a RICO enterprise, the Court finds that Haynes has failed to plead either an enterprise or a pattern of racketeering activity necessary to support a substantive RICO claim.

The BISD Defendants also ask the Court to dismiss Walker's substantive RICO claims against them on the grounds that Walker has failed to allege that he suffered damages. Section

1964(c) states, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). This provision requires a plaintiff to prove that his injury was proximately caused by a RICO violation under § 1962. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Moreover, if a plaintiff pleads a violation of § 1962(a), the plaintiff must allege that the injury "flow[s] from the use or investment of racketeering income." *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929-30 (5th Cir.), *cert. denied*, 537 U.S. 1047 (2002) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)); *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992). This last element is entirely missing from Walker's pleading.

In addition to Walker's failure to allege racketeering income, he has also failed to plead an injury caused by such use or investment as required by § 1962(a), and thus his § 1962(a) claim must be dismissed on that ground as well. As to his claim under § 1962(c), Walker pleads that he "was damaged by BISD Agents' activities." Walker does not respond to the issue on damages raised in BISD's motion, but in his response to Neil and Neild's motion he incorporates by reference his response to Wayne Reaud's motion to dismiss (doc. #82). However, this response also does not address whether an injury has been pleaded in Walker's § 1962(c) claim, and, in turning to the complaint, the only injuries alleged relate to a number of prospective business opportunities Walker allegedly lost when BISD rated him unfavorably in an "Evaluation Matrix" created to rank bidders for an electrical services contract with BISD, then published the Evaluation Matrix online. As this Court has previously noted, Walker's civil tort claims, including

defamation and tortious interference with contract, are not RICO predicate acts.  Thus, damages arising from those acts are not actionable under § 1964.  Walker must allege injuries to his business or property that were proximately caused by RICO racketeering.  This, he has not done.  Haynes does not allege any damages she may have suffered as a result of the alleged § 1962(c) violation.  Accordingly, her claim must also be dismissed.

Therefore, Plaintiffs' substantive RICO offenses against the BISD Defendants must be dismissed for failing to plead a pattern of racketeering activity, an enterprise, that any BISD Defendant except Neil and Neil was associated with an enterprise, an injury, an income derived from RICO racketeering, or the use or investment of such income by a RICO enterprise.

### 2.    RICO Conspiracy

In order to show a RICO conspiracy, a plaintiff has to demonstrate that two or more persons agreed to commit a substantive RICO offense and that each defendant knew of and agreed to the overall objective of the RICO offense.  18 U.S.C. § 1962(d); *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010); *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139-40 (dismissing plaintiff's RICO conspiracy claim when the complaint "[did] not allege facts implying any agreement involving each of the Defendants to commit at least two predicate acts"); *Marina Dist. Dev. Co., LLC v. Ivey*, 93 F. Supp. 3d 327, 341 (D.N.J. 2015) (citing *United States v. Phillips*, 874 F.2d 123, 127 n.4 (3d Cir. 1989)).  Each defendant must understand the scope of the enterprise and knowingly agree to further its affairs through committing substantive RICO offenses.  *United States v. Marcello*, 537 F. Supp. 1364, 1379 (E.D. La. 1982), *aff'd sub nom. United States v. Roemer*, 703 F.2d 805 (5th Cir. 1983).  Here, because Plaintiffs have failed to plead substantive RICO offenses, their claims of RICO conspiracy necessarily fail as well.

3. Section 1983

BISD and the BISD Defendants ask the Court to dismiss Walker's claims under § 1983 on the grounds that Walker has not alleged a BISD policy that would subject BISD itself to liability under § 1983 and the BISD Defendants have qualified immunity against the claims asserted against them in their individual capacity. Because the Court finds that Plaintiffs have failed to properly plead RICO claims, the Court need not decide whether the BISD Defendants are entitled to qualified immunity for those claims. *Whitley v. Hanna*, 726 F.3d 631, 639 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 1935 (2014) (citations omitted).

a. Official Capacity Claims

As a preliminary matter, Walker's § 1983 claims against the BISD Defendants in their official capacities must be dismissed because they are duplicative of the claims against BISD. "Suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent." *K.T. v. Natalia I.S.D.*, No. SA-09-CV-285-XR, 2010 WL 1484709, at *3 (W.D. Tex. Apr. 12, 2010) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 171. In the complaint, Walker asserts that all BISD Defendants are being sued in their official and individual capacities and does not distinguish which claims are asserted in what capacity. Accordingly, the § 1983 claims against the BISD Defendants in their official capacities should be dismissed.

b. Section 1983 Claims Against BISD Itself

Local governmental entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010), *cert. denied*, 563 U.S. 1038 (2011); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002). They may not be held liable for the acts of their employees through a theory of *respondeat superior*. *Monell*, 436 U.S. at 694; *Zarnow*, 614 F.3d at 167. Instead, a plaintiff "must plead facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; (4) and the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *accord Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010), *cert. denied*, 963 U.S. 935 (2011).

Unlike suits against individual government officials, a plaintiff in a civil rights action does not need to satisfy a heightened pleading standard in order to bring suit against a governmental entity. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002). It is sufficient for the plaintiff to submit a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 513 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated on other grounds by *Twombly*, 550 U.S. at 561). "'Boilerplate' allegations of inadequate municipal policies or customs generally suffice." *Buchanek v. City of Victoria*, No. V-08-08, 2008 WL 4093623, at *9-10 (S.D. Tex. Aug. 28,

2008); *see also Allen v. City of Galveston*, No. G-06-467, 2007 WL 996628, at *2 (S.D. Tex. Mar. 30, 2007) (denying motion to dismiss where plaintiffs alleged "official policies, de facto policies, and/or customs that require police officers to show unqualified support for other officers" despite doubts whether plaintiffs could ultimately prevail); *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 988 (E.D. Tex. 2005) (denying motion to dismiss where plaintiff's petition alleged a "pattern of widespread abuse . . . in the use of force generally, and taser guns in particular, against black citizens" even though the complaint was "devoid of specific factual allegations that support the claim"); *but cf. Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011) (requiring plaintiffs, at the motion to dismiss stage, to show "more than boilerplate allegations but not demanding specific facts that prove the existence of a policy").

Walker's pleading of his § 1983 claims is vague, to put it mildly. He asserts that "BISD Agents engaged in conduct that deprived [him] of rights, privileges, or immunities granted under federal law, the Texas Constitution, and the U.S. Constitution, in that BISD deprived Calvin Walker of equal protections of the laws under the 14th Amendment of the Constitution." Walker further pleads that "BISD and BISD's employees in their official capacity"[7] discriminated against him on the basis of race, his refusal to join the IBEW, and other "individual attributes." The only specific right, therefore, that Walker raises is his right to equal protection under the Fourteenth Amendment, and he has clarified in his supplemental briefing that his § 1983 claims are based on equal protection on the basis of race.

---

[7] It could be argued, as BISD has done, that this provision should be read to mean that Walker does not intend to assert § 1983 claims against the BISD Defendants in their individual capacity. The Court need not decide this issue, however, because Walker has failed to state a claim against the majority of the BISD individuals or, alternatively, they are entitled to qualified immunity.

The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To state an equal protection claim, "a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class . . . or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 277, 238 (5th Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.), *clarified*, 186 F.3d 633 (5th Cir. 1999)). Moreover, "[t]o state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

As to Walker's assertions that the BISD Defendants discriminated against him for his refusal to join the IBEW, the Court has previously noted that Walker pleads that the entire conspiracy to ruin his reputation and business was started by the IBEW in retaliation for Walker's refusal to join the union and then later morphed into a wider racial conspiracy. However, after combing through the entire sprawling, 52-page complaint, the Court cannot find that Walker has ever pleaded that BISD or the BISD Defendants treated him differently on the basis of his refusal to join the IBEW. The closest mention of such discrimination occurring is contained in Walker's description of BISD Executive Cabinet meetings, where Ingram, a BISD employee, commented that "the IBEW did not like Mr. Walker having the contract [to provide electrical services to

BISD] . . . ." Such conduct obviously is not an equal protection violation.[8] *Williams*, 180 F.3d at 706 ("Where the conduct at issue consists solely of speech, there is no equal protection violation."); *accord Priester*, 354 F.3d at 424.[9] Neither is there any support for a discrimination claim based on "other individual attributes," which is never defined or explained.[10]

This leaves racial discrimination as the only possible basis for Walker's equal protection claim. Although Walker makes a number of assertions that BISD Defendants acted against him on the basis of race, he only mentions potential BISD policies in two places. The first occurs under the subheading "BISD's 'Blacks Only' Contracting & Invoicing Requirements," wherein Walker alleges that Kingsley, Chief Financial Officer for BISD, created detailed spreadsheets about Walker's work for the district, but did not do so for any other contractor. Walker does not allege that this action stemmed from intentional racial discrimination; moreover, similar to Ingram

---

[8] Furthermore, Ingram is not pleaded to be a policymaker for BISD, and there is no indication his actions were taken pursuant to a BISD policy.

[9] For this reason, Neil and Neild's comments at Board of Trustee meetings and in media sources also do not give rise to equal protection claims.

[10] The complaint also refers to an incident where "members of the Conspiracy" instructed BISD employees to stop giving work to Walker because they were "unhappy about their inability to stop Mr. Walker from continuing to serve BISD and earn a living in defiance of IBEW 479's membership." Walker, however, defines the "Conspiracy" to include all 35 individuals and entities sued in this action and makes no attempt to clarify who allegedly ordered BISD to stop using Walker's work. Indeed, the Court notes that he has previously argued that this allegation refers to the IBEW. *See Plaintiffs' Response to Defendant IBEW's Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction* (doc. #139), at ¶ 15. Additionally, he does not plead that "members of the Conspiracy" refers either to a policymaker for BISD or was done pursuant to a BISD policy, and, as has been previously mentioned, Walker's supplemental briefing has clarified that his § 1983 claim is based on equal protection on the basis of race.

making comments about Walker at a BISD meeting, the Court does not believe that the creation of spreadsheets amounts to a violation of Walker's constitutional rights.[11]

Also under the "Blacks Only" subheading, Walker alleges that Kingsley subsequently began imposing onerous invoicing requirements upon Walker and other unidentified minority business owners, which were then submitted to newspapers and "eventually were made the basis of the Government's failed prosecution of Mr. Walker." Walker claims that Caucasian-owned businesses were not required to submit such detailed invoices, and refers to the practice as a "BISD policy regarding invoicing." However, even assuming these assertions meet the relatively low burden for pleading a policy, Walker completely fails to allege that Kingsley is a policymaker for BISD.

Identification of a "final policymaker" is a question of state law. *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1000 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (granting motion to dismiss where plaintiff failed to allege facts linking purported policy to the school board of trustees or that the board of trustees had delegated final policymaking authority to the defendant). "The 'final policymaker' is the official or officials whose decisions are unconstrained by policies imposed by a higher authority." *Id.* (citing *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001)). Under Texas law, final policymaking authority lies with the board of trustees alone. *Rivera v. Houston Indep.*

---

[11] In addition, while Walker complains that Kingsley's later invoicing requirements were a result of racial discrimination, he does not allege that her creation of spreadsheets or allegedly improperly conducted bidding procedure was a result of intentional racial discrimination or that other, non-African American contractors similarly situated to Walker were treated differently. In fact, Walker specifies that he was the only person subjected to the invoicing requirements and that "all other contractors" received bid packets, with no mention of race. Accordingly, these events do not give rise to equal protection claims.

*Sch. Dist.*, 349 F.3d 244, 247-48 (5th Cir. 2003); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993).  Walker has not pleaded any facts that would support a finding that Kingsley was a policymaker for the district or that the BISD Board of Trustees had delegated any policymaking authority to her.  Accordingly, her alleged invoicing "policy" does not subject the BISD to liability, even assuming that it qualifies as a policy for pleading purposes.  *See McCall v. Dallas I.S.D.*, 169 F. Supp. 2d 627, 635 (N.D. Tex. 2001) (dismissing a plaintiff's complaint for failing to allege that the school board delegated final policymaking authority to the superintendent).

Walker's second mention of a policy or practice is equally deficient.  He alleges that "prior to 2012," Neil and Neild engaged in the "practice" of requesting copious amounts of documents about African American employees, including Walker, which the conspiracy would then deliver to media sources in order to defame those individuals.[12]  Furthermore, Neil, Neild, and other unidentified Board of Trustees members are alleged to have requested documentation about African American employees who attended meetings of the Texas Alliance of Black School Educators, but did not make such requests for white employees.  Walker merely refers to Neil and Neild's conduct as a "practice" of the conspiracy, not of the Board of Trustees, and, furthermore, he does not allege that their actions were taken pursuant to any sort of official or unofficial district policy.[13]  Accordingly, BISD is not subject to liability for Neil or Neild's conduct, and Walker's § 1983 claims against BISD should be dismissed with prejudice.

_____

[12] Notably, however, Walker identifies only himself as having been defamed by this alleged practice.

[13] Walker also does not plead that the white employees not subject to document requests were similarly situated to him, even assuming that requesting internal documents about employees or contractors violates those individuals' constitutional rights, which the Court does not find to be the case.

c.    Section 1983 Claims Against Individual BISD Defendants

In order to plead a § 1983 claim against an individual defendant, however, a plaintiff must allege facts demonstrating that the defendant participated in the alleged wrong. *See Floyd v. City of Kenner*, 351 F. App'x 890, 893 & n.2 (5th Cir. 2009) (recognizing that with regard to claims against public officials in their individual capacities, "[h]eightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused plaintiff's injury"); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."); *accord Alexander v. Smith*, 561 F. App'x 421, 423-24 (5th Cir. 2014); *Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005). Accordingly, the complaint must allege facts that each defendant was personally involved in the civil rights violation. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010).

None of the individual defendants are mentioned by name in Walker's § 1983 claim. Further, even after digging through the complaint, Walker has not pleaded facts demonstrating that Monroe, Bernard, Simmons, Turner, Domino, Cabarello, Carroll, Covington, Saleme, Butler, or Ingram were personally involved in a violation of Walker's equal protection rights.[14]  Walker's

---

[14] The only conduct particularly attributed to Ingram concerns his comments at BISD meetings, which have already been addressed. Covington, Saleme, and Butler allegedly "were responsible" for preparing the Evaluation Matrix used to award an electrical services contract in 2014 and rated Walker poorly for "admitt[ing] guilt to padding BISD invoices" and "pa[ying] back over $2,000,000." Their

26

§ 1983 claims against them must be dismissed for failure to state a claim.[15] Nonetheless, the Court will analyze whether Kingsley, Neil, and Neild are entitled to qualified immunity.

### d. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity is available to defendant officials in suits arising under § 1983, and may be asserted in a 12(b)(6) motion, provided the official's entitlement to qualified immunity plainly appears based on the facts alleged in the complaint. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Morgan v. Swanson*, 659 F.3d 359, 400 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 289-91 (5th Cir. 2015).

"An official acts within his discretionary authority when he [or she] performs nonministerial acts within the boundaries of his [or her] official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998) (citing *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). "Ministerial acts" refer to those taken pursuant to specific orders or "spelled out in minute detail beforehand."

---

exact role in its creation is unclear. Walker only pleads generally that "[t]hese actions are also a violation of Mr. Walker's civil rights." He does not specify what right was violated, and, even if the Court were to assume Walker meant to invoke his equal protection rights, the Court does not see how this event constitutes an equal protection violation, as Walker does not plead that his negative ratings were a result of intentional racial discrimination or that he was treated differently from others similarly situated. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012).

[15] Moreover, because Walker has failed to state a claim against these individuals, they are also entitled to qualified immunity.

*Tamez*, 118 F.3d at 1091-91; *see Beltran v. City of El Paso*, 367 F.3d 299, 303-04 (5th Cir. 2004).

Qualified immunity is an affirmative defense, requiring the defendant to both plead and establish his or her entitlement to immunity. *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). However, "the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). "Where a defendant pleads qualified immunity and shows [he or she] is a government official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). In this situation, Kingsley, Neil, and Neild's positions as Chief Financial Officer and Board of Trustee members, respectively, indisputably involve the exercise of discretion and were not taken pursuant to specific orders or spelled out in minute detail beforehand. Accordingly, the burden shifts to Walker to rebut their entitlement to qualified immunity.[16]

Once a defendant raises qualified immunity, the Court engages in a two-part analysis, deciding whether "the defendant's conduct violated a federal right" and "whether the defendant's

---

[16] In an abundance of caution, although neither party has raised the issue, the Court notes that qualified immunity is not available "in a suit to enjoin future conduct." *Pearson*, 555 U.S. at 242-43 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Walker, however, has not such sought such injunctive relief in this case. Furthermore, his request for the Court to order that "each member of the Conspiracy issue an unequivocal retraction, correction, and/or clarification as to Walker [sic] relationship with BISD" is not a legally permissible form of relief and appears to relate solely to his defamation claims. *See Kramer v. Thompson*, 947 F.2d 666, 680 (3d Cir. 1991) ("Although the notion of *compelled* retraction occasionally has been advanced in the literature, we have not found a single case in which such a remedy has been awarded.") (emphasis in original). Accordingly, qualified immunity is appropriate.

behavior was objectively reasonable under clearly established law at the time the conduct occurred." *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1865 (2014). The Court may consider these prongs in any order. *Ashcroft*, 563 U.S. at 735.

In Walker's supplemental briefing on the issue of qualified immunity, he clarifies that his equal protection claims are based on the following acts: (1) Kingsley's creation of detailed spreadsheets about him; (2) Kingsley's imposition of stringent invoicing requirements on Walker and other minority-owned businesses; (3) BISD's improper bid process in 2008; (4) the creation of the Evaluation Matrix negatively rating Walker; and (5) Neil and Neild obtaining documentation about African American BISD employees who had attended the Texas Alliance of Black School Educators meetings. The Court has already addressed whether the incidents concerning spreadsheets, the 2008 bidding process, and the Evaluation Matrix give rise to valid equal protection claims and found that they do not. Accordingly, Kingsley, Neil, and Neild (as well as the other BISD Defendants) are entitled to qualified immunity to the extent Walker's equal protection claims are based on these events.

Walker further alleges that Kingsley "imposed onerous invoicing and recordkeeping [sic] requirements" on him and other, unidentified minority-owned businesses that she "did not impose on businesses owned by whites."[17] Specifically, Walker avers that he had to "submit line by line invoices as well as receipts" and that such requirements "were not imposed on any other Caucasian-owned businesses providing time and material services to BISD."[18] However, while

_____

[17] Walker's pleading regarding the treatment of other minority-owned businesses is contradictory, as two paragraphs later, he pleads that "the only electrical contractor that BISD required to submit invoices and receipts was Mr. Walker."

[18] Walker further states that the invoices and receipts he provided were used in newspaper articles critical of his work and formed the basis of his federal criminal prosecution, but does not allege that

the complaint states generally that Caucasian-owned businesses providing time and materials services to BISD" were not required to submit such detailed invoices and receipts, Walker "pleads no facts to establish that [he] and the [Caucasian] business owners are similarly situated." *Bowlby*, 681 F.3d at 227 (holding that a white business owner, who claimed that the city violated her equal protection rights when it shut down her food business while allowing black individuals to continue operating their businesses despite violating city laws and regulations, had failed to plead an equal protection violation when her complaint provided "no allegations regarding the types of businesses owned by black individuals, the size of their businesses, where they are located, or what laws and regulations they ha[d] violated"); *see Clark v. Owens*, 371 F. App'x 553, 554 (5th Cir. 2010) ("[Plaintiff's] conclusory assertions that he was treated differently than other similarly situated inmates are insufficient to state an equal protection claim.").[19] Neither does Walker provide any further detail in his supplemental briefing. Accordingly, Kingsley is entitled to qualified immunity. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) ("Qualified immunity is applicable unless the defendant's conduct violated a clearly established constitutional right.").

Moreover, it is apparent on the face of the complaint that Kingsley's actions were objectively reasonable. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). "Put simply, qualified immunity protects 'all but the plainly

---

Kingsley, or any other particular BISD Defendant, was responsible for or involved with these actions.

[19] Additionally, Walker does not plead that Kingsley's actions were taken as a result of intentional discrimination, although this is implied.

incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The timeline of events in the complaint is difficult to follow, as the factual events are not presented in chronological order; however, the Court has pieced them together. Kingsley's invoicing requirements are pleaded to have taken place after the 2008 bidding process and before Walker's contract was terminated in 2014. During this same time period, Walker purports to have been investigated by the TDLR for falsifying his work history and to temporarily losing his electrician's license. This is also the same time period as Walker's indictment for dozens of counts of fraud, as well as his highly public investigation and prosecution for allegedly defrauding BISD for millions of dollars. Possibly most importantly, however, this is the same time period during which Walker pleaded guilty to the willful failure to pay income taxes and admitted, among other things, that a bid document for $382,975.32 had been altered to look like an invoice and sent to BISD for payment and that BISD's records "contained similar altered documents." Put in context, Kingsley's decision, as Chief Financial Officer, to require Walker to submit particularly detailed invoices and receipts, when no other electrical contractor was required to do so, was objectively reasonable.

Neil and Neild are argued to have requested copious amounts of documentation about African American employees and vendors of BISD, including Walker, which were then turned over to media sources by parties unknown. Neil and Neild are also reported to have requested documents about African American BISD employees who had attended the Texas Alliance of Black School Educators ("TABSE") meetings, although Walker does not claim to be among this group. He argues, however, that the document requests were not made for white attendees of the TABSE meetings or "other white BISD employees." Again, similar to the claims against Kingsley,

31

Walker merely implies, but does not plead, that these document requests were the result of intentional racial discrimination.[20] Furthermore, he does not adequately plead that non-African American individuals similarly situated to Walker not were subject to the same document requests.[21] Accordingly, Neil and Neild are entitled to qualified immunity because Walker has not pleaded that their conduct violated a constitutional right.

Additionally, Neil and Neild's conduct was objectively reasonable. Walker pleads that these document requests began "prior to 2012" and escalated in intensity in 2012 when Dr. Carroll Thomas, BISD's former Superintendent and Walker's supporter, retired. Walker was indicted for fraud in May of 2011, and pleaded guilty to willfully failing to pay income taxes on July 17, 2012. *United States v. Walker*, No. 1:11-CR-67 (docs. # 157, 158). Accompanying his plea agreement was the previously discussed *Factual Basis and Stipulation*, wherein Walker admitted that altered documents were submitted to BISD as invoices for payment of hundreds of thousands of dollars. *Id.* Moreover, under Texas law, a school district's board of trustees is required by law to "oversee the management of the district" and monitor district finances. TEX. EDUC. CODE §§ 11.051(a)(1), .151(b), .1511. Therefore, when considering all of the facts and circumstances alleged and the complaint, it is clear that Neil and Neild's conduct was objectively reasonable.

Therefore, because Kingsley, Neil, and Neild are entitled to qualified immunity, Walker's § 1983 claims against them must be dismissed with prejudice.

---

[20] He states that "[t]he common trait of these individuals was their race."

[21] For the incidents where documents were purportedly collected about Walker and other African American venders or employees and sent to newspapers for defamatory purposes, he does not plead that non-African American individuals were spared this treatment. Regarding the document requests for attendees of the TABSE meetings, again, Walker does not claim to be part of this group, and, regardless, he does not plead any details to show that the white participants of the TABSE meetings or other white BISD employees were similarly situated to himself. *See Bowlby*, 681 F.3d at 227.

B.     State-Law Claims

BISD and the BISD Defendants have raised a number of defenses to Walker's state-law claims. They assert that his claims against the individual BISD Defendants are precluded under the election-of-remedies provision of the Texas Tort Claims Act ("TTCA"), Texas Civil Practice and Remedies Code § 101.106(a) and (e); professional immunity; official immunity; qualified immunity under Texas law; and because Walker has failed to exhaust administrative remedies prior to filing suit. For Walker's state tort claims against BISD, BISD further asserts sovereign immunity. BISD also asserts that Walker has failed to plead a valid claim for breach of contract.

1.     Sovereign Immunity

BISD asserts that it is immune from suit against Walker's civil tort claims. Under Texas law, governmental units such as school districts are immune from suit unless that immunity has been expressly waived by the Texas Legislature. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *see Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (holding that sovereign immunity extends to school districts); *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 857 (Tex.2002). In pleading, therefore, a plaintiff must affirmatively demonstrate the trial court's jurisdiction by alleging a waiver of that immunity. *Nunez v. City of Sansom Park,* 197 S.W.3d 837, 840 (Tex.App.—Fort Worth 2006, no pet.).

Walker maintains that BISD may be sued because the BISD Defendants were performing proprietary functions as defined under the TEX. CIV. PRAC. & REM. CODE § 101.0215. However, his argument is misguided. It is true, as Walker argues, that a municipality is "liable for torts arising from the exercise of its proprietary functions, but it is generally immune from suit and

liability for torts arising from the exercise of its governmental functions, except for the limited waiver provided by the [TTCA]." *Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex. App.—Fort Wort 2008, no pet.) (citing TEX. CIV. PRAC & REM. CODE § 101.0215(a), (b)). However, BISD is not a municipality; it is a school district, and, therefore, § 101.0215 does not provide a waiver of its sovereign immunity.[22]

Instead, school districts in Texas "retain their sovereign/governmental immunity from all common law claims unless the Texas Legislature has expressly waived immunity in a specific statute." *A.W.*, 25 F. Supp. 3d at 1006 (citing *Mission Consol. I.S.D. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008)). While the TTCA provides a limited waiver of immunity for certain suits against governmental entities, "[u]nder the TTCA the only permissible tort claim against a school district is a claim based on misuse of a motor vehicle." *Id.* (citing TEX. CIV. PRAC. & REM. CODE §§ 101.001, 101.051; *Mission Consol. I.S.D.*, 253 S.W.3d at 655). Walker has not alleged misuse of a motor vehicle and has provided no other statutory waiver of BISD's immunity; therefore, his state-law tort claims against BISD must be dismissed.

### 2. Breach of Contract

BISD further asks the Court to dismiss Walker's breach of contract claim against him on the grounds that Walker has not identified a breach. Under Texas law, a plaintiff must plead four elements to establish a breach of contract claim: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance of the contract; (3) a breach of contract by the defendant; and (4) damages as a result of the breach. *Williams v. Wells Fargo Bank, N.A.*, 560

---

[22] Further, "Texas school districts never perform proprietary acts." *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 421 (Tex. App.—Fort Worth 2014, no pet.) (citing a number of supporting cases).

F. App'x 233, 238 (5th Cir. 2014) (citing *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). To plead a breach, "[a] plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (collecting cases).

Turning to the complaint, Walker alleges that "BISD breached the contract by failing to adequately notify Mr. Walker of termination, as well as violations of the terms of the contract [sic]." Elsewhere in the complaint, Walker avers that "for the last few months of the Contract, and despite the fact that BISD needed electrical repairs and maintenance, BISD employees were ordered to halt using Mr. Walker even though he was BISD's contractor. This was in violation of the Contract." Walker neither points to a specific provision of a contract with BISD that requires BISD to notify him of termination nor even attaches a copy of the purported contract to his complaint. He also does not specify which portion of his contract with BISD was violated when he did not receive work from BISD during the last few months of its terms. Accordingly, his breach of contract claim must be dismissed. *See Coleman v. Bank of Am., N.A.*, No. 3-11-CV-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011), *report and recommendation adopted*, No. 3:11-CV-0430-G-BD, 2011 WL 2516668 (N.D. Tex. June 22, 2011) (dismissing plaintiff's breach of contract claim when the plaintiff pointed to no specific provision that was breached by the defendant).

### 3. Texas Tort Claims Act – Election of Remedies Provision

BISD has moved to dismiss Plaintiffs' state-law claims against the individual BISD Defendants under the election-of-remedies provision of TTCA. TEX. CIV. PRAC. & REM. CODE § 101.106(a), (e). The election-of-remedies provision of the TTCA provides that "[t]he filing of

a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." *Id.* § 101.106(a); *Van Deelen v. Cain*, 628 F. App'x 891, 897-98 (5th Cir. 2015). The provision "also permits the governmental unit to move for 'immediate[ ]' dismissal of its employees when the lawsuit names both the governmental unit and individual employees." *Van Deelen*, 628 F. App'x at 898; *see* TEX. CIV. PRAC. & REM. CODE § 101.106(e); *Gil Ramirez Grp., L.L.C.*, 786 F.3d at 415; *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010). Taken as a whole,

> [u]nder the [TTCA]'s election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when the suit is filed against the governmental unit only . . .; (2) when suit is filed against both the governmental unit and its employee . . .; or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit . . . .

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 101.106(a), (e), (f)).

"[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106." *Id.* at 659; *accord Bustos*, 599 F.3d at 464. Furthermore, "the TTCA also covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity." *Gil Ramirez Grp., L.L.C.*, 786 F.3d at 415. Walker's core argument against the election-of-remedies provision is that he has not, in fact, asserted claims against both the BISD and individual BISD Defendants. Instead, he maintains that only civil conspiracy, RICO conspiracy, and § 1983 claims have been brought against both BISD and the BISD Defendants, while defamation, tortious interference, and his substantive RICO violations are alleged against the BISD Defendants in their

individual capacities. This argument is belied by the complaint, wherein Walker expressly states that each of the individual BISD Defendants is being sued in both their individual and official capacities and makes no attempt to distinguish which claims are brought in which capacity. Such pleading is essentially identical to suing BISD itself. *Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015) ("Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer . . . .") (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 382-83 (Tex. 2011)). Accordingly, all of Walker's state-law tort claims—defamation, tortious interference with contract, and civil conspiracy—fall under the purview of § 101.106 because they are asserted against both BISD and the individual BISD Defendants.[23]

In order to determine whether the individual BISD Defendants must be dismissed under the TTCA, the Court must first determine whether they are "employees." Under the TTCA, "'[e]mployee' means a person, including an officer or agent who is in the paid service of a government unit . . . ." TEX. CIV. PRAC. & REM. CODE § 101.001(2). Nonetheless, "employee" does not include an independent contractor or "a person who performs tasks the details of which the governmental unit does not have the legal right to control." *Id.* There are three categories of BISD individuals identified in the complaint. The first group consists of Covington, Saleme, Butler, Kingsley, and Ingram (collectively, "BISD staff"). All are identified in the complaint as employees of BISD, and Plaintiffs do not dispute that they are employees under the TTCA. Thus, the Court finds that the BISD staff members are employees of BISD for the purposes of the TTCA.

---

[23] The BISD Defendants also maintain that § 101.106 requires the dismissal of Plaintiffs' federal claims; however, the Court declines at this juncture to decide whether Texas law provides for the dismissal of federal claims, and, moreover, such application is unnecessary in light of the numerous other reasons Plaintiffs' federal claims must be dismissed.

Second, Plaintiffs' identify a number of BISD's current Board of Managers: Monroe; Bernard; Simmons; Turner; Domino; Cabarello; and Carroll (collectively, "Board of Managers"). Third, Plaintiffs include two members of BISD's former Board of Trustees, Neil and Neild (collectively, "Board of Trustees"). Parties dispute whether BISD's Board of Managers or Board of Trustees qualify as employees under the TTCA.

Walker asserts that because neither the Board of Trustees nor Board of Managers are paid for their services, they do not constitute employees for the purposes of the TTCA. BISD concedes that the Board of Managers and Board of Trustees are not "employees" under the § 101.002(b) definition. Nonetheless, they argue that both groups of individuals qualify as professional employees under the more specific definition in the Texas Education Code, which may be used in lieu of the more general § 101.002(b) definition. TEX. EDUC. CODE § 22.051(a)(5). The Fifth Circuit recently addressed this very issue in *Van Deelen v. Cain*, in which the court found that *Franka*, a Texas Supreme Court case holding that a medical resident neither paid nor controlled by a government entity was nonetheless an employee under the TTCA because he was considered an employee under the Texas Health and Safety Code, provided "some basis for concluding that the Texas Supreme Court would import the context-specific definition of employee found in Section 22.051 of the Texas Education Code to the generic definition found in 101.001(2) of the TTCA." *Van Deelen v. Cain*, 628 F. App'x 891, 899 (5th Cir. 2015) (discussing *Franka v. Velasquez*, 332 S.W.3d 367, 374 (Tex. 2011)); *see Gil Ramirez Grp., L.L.C.*, 786 F.3d at 416-17. Thus, the Board of Trustees and Board of Managers are entitled to be dismissed under the TTCA if they qualify as professional employees under the Texas Education Code.

Section 22.051 of the Texas Education Code defines "professional employee of a school district" to include superintendents, board of trustee members, and "any other person employed by a school district whose employment requires certification and the exercise of discretion." As explained below in the Court's analysis of professional immunity, the BISD Board of Managers, Board of Trustees, Butler, Covington, Saleme, and Ingram qualify as professional employees under § 22.051, acting within the scope of their authority.[24] Furthermore, there can be no argument that Walker's tort claims against the individual BISD Defendants concern the same subject matter as their claims against BISD itself, as, indeed, they are the same claims. Accordingly, they must be dismissed.

4.      Professional Immunity

BISD and the individual BISD Defendants argue that Plaintiffs' state-law tort claims must be dismissed against the individual BISD Defendants because all of these individuals, except Kingsley, are entitled to professional immunity under Texas law. TEX. EDUC. CODE § 22.0511(a). Walker offers no response to this defense. "A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment of discretion on the part of the employee . . . ." *Id.* "Professional employee," under Texas law includes a superintendent, a

_____

[24] However, the Court does not find that Haynes' assault claim should be dismissed under the TTCA. In *Gil Ramirez*, the Fifth Circuit held that a school board trustee alleged to have committed bribery and peddling influence was not entitled to dismissal under the TTCA because he was not acting within the scope of his duties in committing those acts. 786 F.3d at 416-17. For the reasons explained below, the Court does not find that it is apparent on the face of the complaint that Neil was acting within the scope of his authority when he purportedly physically moved Haynes from a doorway outside a BISD press conference.

member of a board of trustees, and "any other person employed by a school district whose employment requires certification and the exercise of discretion." *Id.* § 22.051(a)(1)-(6).

A professional employee acts within the scope of his or her employment when "the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed." *Chesshir v. Sharp*, 19 S.W.3d 502, 504-05 (Tex. App.—Amarillo 2000, no pet.) (citing *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972)). "General act" refers to the "general course of conduct being undertaken." *Id.* Once a court determines that a professional employee acted within the scope of employment, "neither 1) the failure of the employer to expressly authorize the act, nor 2) the fact that it was performed negligently, strip the act of its protective shield." *Id.* (citing *Williams v. Chatman*, 17 S.W.3d 694, 699 (Tex. App.—Amarillo 1999, pet. denied)).

Third, a professional employee must establish that the acts upon which the claims are based involved the exercise of judgment or discretion, as opposed to involving ministerial actions. TEX. EDUC. CODE § 22.0511(a). "Ministerial acts are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Kobza v. Kutac*, 109 S.W.3d 89, 94 (Tex. App.—Austin 2003, pet. denied) (quoting *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994))). "On the other hand, if an action involves personal deliberation, decision, and judgment, it is discretionary." *Id.* There is no good faith requirement for professional immunity. *Robinson v. Brannon*, 313 S.W.3d 860, 866 n.3 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citations omitted).

Turning to the complaint, it is clear that members of the Board of Trustees, Board of Managers, and Butler (BISD's superintendent), are professional employees under the statute. TEX. EDUC. CODE § 22.0511(a).  Covington, Saleme, and Ingram, on the other hand, argue that they are professional employees because they are certified employees whose employment requires the exercise of discretion.  *See id*. § 22.051(a)(6).  In support, they have attached their professional certifications to their response.  These certifications are properly before the Court because they are official records held by the Texas State Board of Educator Certification.  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)).  Accordingly, as certified administrators for BISD, Covington, Saleme, and Ingram also qualify as professional employees under the Texas Education Code.

It is also clear on the face of the complaint that the majority of BISD Defendants were acting incident to or within the scope of their duties and that their actions were discretionary, not ministerial.  For Monroe, Bernard, Simmons, Turner, Domino, Cabarello, and Carroll, their only mention in the complaint is their membership on the BISD Board of Managers that terminated Walker's existing contract with BISD and voted not to renew his contract in 2014, actions which are well within the scope of their discretionary authority as board members.  TEX. EDUC. CODE §§ 11.051(a)(1), 11.151(b) (a school district's board of trustees must "oversee the management of the district"); *id*. § 11.1511 (board of trustees may enter into contracts or delegate contractual authority to the superintendent and are additionally required to monitor district finances); *see Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (school principals accused of circulating internal memoranda about plaintiff's fitness for employment were entitled

to professional immunity because defendants were acting within scope of employment and actions involved exercise of judgment and discretion); *Lott v. Kenedy Indep. Sch. Dist.*, No. SA-08-CA-0935-XR, 2009 WL 2843367, at \*3 (W.D. Tex. Aug. 31, 2009) (finding school board trustees acted within the scope of their employment and their acts were discretionary when they voted against renewing employment contract of district's business manager and stated that she had been performing work for another school district on the school district's time). Covington, Saleme, and Butler were responsible for creating the Evaluation Matrix that negatively rated Walker and purportedly led to his contract not being renewed with BISD. As Director of Contracts, Chief Financial Officer, and Superintendent, respectively, there can be no reasonable argument that such action would not be within the scope of or at least incident to their duties.

Neild is accused of making document requests about Walker and speaking out against Walker at Board of Trustee meetings, which are also within the scope of his authority as a board member.[25] TEX. EDUC. CODE § 11.1512(c) (board of trustees has the right to access information and documents maintained by the district). Similarly, Neil also spoke against Walker at meetings; publically commented about Walker, his performance, and his pending criminal charges to media sources; and was involved in making document requests. It is apparent, therefore, that both were acting well within their roles as board members.

Ingram's role at BISD is never made clear; however, the only actions specifically attributed to him are speaking out against Walker at BISD Executive Cabinet meetings from 2006 to 2010, after which he was immediately corrected by then-Superintendent Carroll Thomas. Even

---

[25] While Walker asserts that the requested documents "would then be turned over by the Conspiracy to the Beaumont Examiner, or other media outlet," neither Neil nor Neild is reported to have actually done so.

assuming, however, that these statements were made outside the scope of Ingram's employment, any defamation claim arising from them would be barred by limitations, as explained below. Thus, all of the individual BISD Defendants, with the exception of Kingsley (who did not assert professional immunity) and Ingram, are entitled to professional immunity for their conduct against Walker. Walker's tort claims against them should be dismissed with prejudice.[26]

Finally, with regard to Haynes' assault claim against Neil, he maintains that this event as pleaded in the complaint was also incident to or within the scope of his duties as a Board of Trustees member, according to the reasoning of *Rosencrans v. Altschuler*, wherein the Eastland Court of Appeals granted a special exception dismissing an assault claim against the supervisor of a human resources employee employed by a charter school who allegedly had "swung his hand at her in a violent slapping motion" then physically covered her mouth with his hand in order to prevent her from speaking at a meeting about insurance. 161 S.W.3d 517, 518 (Tex. App.—Eastland 2004, no pet.). The supervisor also told her not to talk because he wanted someone else to talk. *Id.* The Court of Appeals held that the supervisor, who was a professional employee under the Texas Education Code, was acting within the scope of his duties because the employee had sued both the supervisor and the school under theories of respondeat superior and agency, and thus had conceded that the supervisor was acting within the scope of his authority. *Id.* at 521.

Similarly, Haynes alleges that Neil physically forced Haynes to move out of the way of the doorway to a BISD press conference concerning "a suit against BISD revolving around the Voting Rights Act of 1965 and in part relating to other legal challenges," in order to allow Jordan to enter

---

[26] Moreover, as this analysis dispenses with all of Walker's claims against the individual BISD Defendants, the Court does not decide their numerous other grounds for dismissal.

the press conference. Haynes does not address whether *Rosencrans* is applicable to her case (or respond at all to the assertion of professional immunity); however, she argues in her response to the issue of exhaustion of remedies that Neil did not have the authority to physically remove a person from school grounds or public passages. Instead, she argues that he should have "enlisted the help of officers who were on school grounds." The Court agrees that it is not apparent on the face of the complaint that Neil, as a member of BISD's Board of Trustees, had the authority to physically remove Haynes from the doorway outside a BISD press conference, although such authority may very well become apparent at the summary judgment stage.[27, 28]

### 5. Statute of Limitations

It is necessary for the court to also address whether Walker's claims based on the BISD Defendants' various statements are barred by limitations, particularly the statements attributed to Neil, Neild, and Ingram. "A complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 241 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1561 (2012). Under Texas law, defamation is subject to a one-year limitations period. TEX. CIV. PRAC. & REM. CODE § 16.002(a). Additionally, Texas applies the one-year statute of

---

[27] Similarly, the Court denies Neil's motion to dismiss Haynes' assault claim on the basis of exhaustion of remedies under § 22.0514 of the Texas Education Code, as this provision also does not apply to professional employees acting outside the scope of their authority. *See Melendez v. Houston Indep. Sch. Dist.*, 418 S.W.3d 701, 710 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Moreover, unlike the other BISD Defendants, Neil does not assert official immunity or state-law qualified immunity.

[28] However, to the extent that Haynes is attempting to allege an assault claim under the Texas Penal Code instead of Texas common law, both parties agree that she is not permitted to do so as a matter of law. "[A] private citizen cannot enforce criminal statutes in a civil action." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) (citations omitted).

limitations to a plaintiff's other causes of action when "the gravamen of the complaint is injury to the plaintiff's reputation because of allegedly defamatory statements." *Hamad v. Ctr. for Jewish Cmty. Studies*, 265 F. App'x 414, 417 (5th Cir. 2008) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987); *Williamson v. N.Y. Times, Inc.*, 980 S.W.2d 706, 710-11 (Tex. App.—Fort Worth 1998, pet. denied)).

The one-year period begins to run when publication is complete, under the "single-publication rule." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007) (citing *Holloway v. Butler*, 662 S.W.2d 688, 692 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)). The Supreme Court of Texas has yet to decide whether the single-publication rule applies to online publications, but the Fifth Circuit in *Nationwide* held that it does. *Id.* at 146 (finding that the statute of limitations for a newspaper article republished to the newspaper's online website began to run as of the date of republication and affirming the trial court's granting of defendant's motion to dismiss under Rule 12(b)(6)); *see Hamad*, 265 F App'x at 417 ("[A]ccordingly, the one-year limitations period begins to run on the first day the publication is posted on the Internet.") (citing *Nationwide*, 512 F.3d at 145-46). The Fifth Circuit also noted that strong public policy considerations favor application of the single-publication rule to Internet postings and that nearly every court to address the issue has held that the single-publication rule applies to information widely available on the Internet. *Nationwide*, 512 F.3d at 145-46 (internal citations omitted); *see Mayfield v. Fulhart*, 444 S.W.3d 222, 228-29 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (agreeing with *Nationwide* and the Fifth Circuit's reasoning); *Cruz v. Van Sickle*, 452 S.W.3d 503, 518 n.20 (Tex. App.—Dallas 2014, no pet.) (same).

Walker pleads that Neil is quoted in an article by Defendant Jon Cassidy ("Cassidy")[29] titled "Texas contractor bills 106 hours to hook up a few feet of wiring." This article is attached as an exhibit to the complaint (doc. #145, exh. 16), and affirmatively states that it was published on July 2, 2013, the date Walker pleads that the article was published. Because the article was published more than one year before Walker filed suit on July 16, 2015, any defamation claim based on that publication is time-barred.

Second, Neil is quoted in an article published by Jordan, titled "DUPED: Walkers panned for contract exclusion with ownership-swap," which is also attached to the complaint. *Fourth Amended Complaint* (doc. #144, exh. 28). The article states that it was published on December 7, 2012. Third, Neil is quoted again in an article published by Jordan in "early 2013," titled "Four on BISD Board not looking out for taxpayers." *Id.*, exh. 30. Neil purportedly commented again to Jordan in "July 2014" that he would seek to have Walker's contract canceled. *Id.*, exh. 27. It is apparent on the face of Walker's pleading regarding these articles that they were published more than one year before he filed suit; accordingly, any defamation claims—as well as tortious interference and conspiracy claims—based on them are time-barred.

Ingram, as has already been discussed, is alleged to have commented at BISD Executive Cabinet meetings held "once a week from at least 2006 to 2010" that the IBEW did not like Walker having an electrical services contract with BISD, that Walker was a sloppy businessman, and that he was not keeping appropriate records. A slander claim "accrues on the date of the communication or publication and not on the date of the consequences . . . ." *Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 563 (Tex. App.—El Paso 2007, no pet.) (quoting *Ross*

---

[29] The claims against Cassidy have been dismissed.

*v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex. App.—Houston [14th Dist.] 1994, no writ)). Walker has affirmatively pleaded that Ingram's comments occurred during public meetings held from 2006 to 2010 and has not asserted any grounds for tolling. Accordingly, any defamation claim arising from these statements is time-barred.

Finally, Walker maintains that Neil and Neild spoke out against him at public Board of Trustees meetings, where Neil called him a "crook" and accused him, among other things, of defrauding BISD. The only such incident specifically mentioned, however, is pleaded to have occurred on July 28, 2012, which, again, is well outside the applicable limitations period. Moreover, there are no particular statements attributed to Neild.

Accordingly, to the extent that Walker's defamation claims—and related tortious interference and civil conspiracy claims—against Neil, Neild, and Ingram are not precluded by the TTCA or those individual's professional immunity, they are also barred by limitations and must be dismissed.

## III.    Leave to Amend

Generally, a court should not dismiss an action for failure to state a claim without giving the plaintiff an opportunity to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *accord Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). However, when the plaintiffs declare the sufficiency of their pleadings and make no attempt to amend their complaint in response to the defendant's challenge pursuant, dismissal is proper when the plaintiffs' allegations fail to state a claim for which relief can be granted. *See Rosenblatt v. United Way of Greater Houston*, 607

F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). In addition, plaintiffs should not be granted leave to amend after being afforded repeated opportunities to do so. *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) ("[P]leading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right."). Furthermore, "where a proposed amendment would be a futile act, a court does not abuse its discretion in denying leave to amend." *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G, 2007 WL 2410007, at *3 (N.D. Tex. Aug. 23, 2007) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

"Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir.), *cert. denied*, 537 U.S. 1044 (2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). Here, Plaintiffs have amended their complaint four times since the case was filed July 16, 2015, and the Court has already ruled on numerous dispositive motions. They have been afforded ample opportunity to rectify any pleading defects. *See Adrian*, 363 F.3d at 404 (opining that the district court did not abuse its discretion by denying leave to amend where the plaintiff did not indicate "what additional facts he could plead that would correct the deficiencies in his previous complaints"). Therefore, dismissal under Rule 12(c) with prejudice is appropriate at this time.

## IV.    Conclusions

Consistent with the foregoing analysis, the undersigned recommends that the Court **GRANT** *Beaumont Independent School District Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint* (doc. #102) and **GRANT IN PART** and **DENY IN PART** *Defendants Neil*

*and Neild's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted* (doc. #64); *Beaumont Independent School District's Motion to Dismiss Individual BISD Defendants Pursuant to the Texas Tort Claims Act Election of Remedies Provision* (doc. #66); and *Defendant Mike Neil's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted* (doc. #198).  Walker's claims against BISD and the BISD Defendants should be **DISMISSED** in their entirety, with prejudice.  All of Haynes' claims, with the exception of her assault claim against Neil should be **DISMISSED** in their entirety, with prejudice.

The BISD Defendants' motions should be **DENIED** to the extent they seek to dismiss Haynes' assault claim against Neil.  Nonetheless, the undersigned recommends that the Court stay any further action regarding this assault claim until it resolves the numerous motions still pending, in order to determine if any federal-law claims remain through which to maintain supplemental jurisdiction.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within fourteen (14) days of service.  Failure to file specific, written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and  recommendations, and from  appellate review of factual findings and legal conclusions accepted by the District Court

except on grounds of plain error.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1).

**SIGNED this the 18th day of August, 2016.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE