

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **CALVIN GARY WALKER,** *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:15-CV-379** |
| | § | |
| **BEAUMONT INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### REPORT AND RECOMMENDATION

In accordance with 28 U.S.C. § 636 and the Local Rules for the United States District Court for the Eastern District of Texas, on October 15, 2015, the District Court referred this matter to the undersigned United States Magistrate Judge for pretrial management. *See Order* (doc. #55). Pending before the Court for purposes of this report are Defendants Bob Rawls ("Rawls"), Deanna Stevens ("Stevens"), and Timothy Brewer's ("Brewer") (collectively "the Federal Defendants") *Motion to Dismiss for Lack of Subject-Matter Jurisdiction, for Failure to State a Claim, and for Insufficient Service of Process* (doc. #211). Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the Court recommends that the motion be **GRANTED**.

I.    **Background**

Plaintiffs Calvin Gary Walker ("Walker"), Walkers Electric, and Walker's Electric originally filed suit in July 16, 2015, in the United States District Court for the Eastern District of Texas, Marshall Division.  Walker and Plaintiff Jessie Haynes ("Haynes") (collectively "Plaintiffs") amended their complaint twice more before the Marshall Division transferred the case to the United States District Court for the Eastern District of Texas, Beaumont Division, on October 2, 2015.  After the case was transferred, Plaintiffs were again granted leave to amend, and their *Third Amended Complaint* (doc. #79) was deemed filed on September 28, 2015. Plaintiffs filed their *Fourth Amended Complaint* (doc. #144) on December 22, 2015.  Additionally, on February 23, 2016, this case was consolidated with a related case, *Haynes v. Crenshaw et al.* (civ. action no. 1:15-CV-437).  *See Order on Consolidation* (doc. #181).  The Federal Defendants filed their motion to dismiss on March 21, 2016.

In Plaintiffs' *Fourth Amended Complaint*, they assert that they are the victims of an extensive, long-lasting conspiracy designed to prevent African-American individuals in Beaumont from gaining power and influence in order to perpetuate "white dominion over Beaumont local politics."  This conspiracy, spanning approximately a decade, allegedly involved around 35 residents and organizations in the Beaumont area, including the Beaumont Independent School District ("BISD"), the BISD Board of Trustees and subsequent Board of Managers, two local newspapers and their employees, two online journalists, the local chapter of the International Brotherhood of Electrical Workers ("IBEW") and several of its members, a Beaumont City Councilman, two local attorneys, the United States Attorney for the Eastern District of Texas, two Assistant United States Attorneys, and two agents with the Federal Bureau of Investigation

("FBI"). The objective of this alleged conspiracy was to ruin Plaintiffs' reputations and businesses as part of a larger campaign to harm minority individuals who "stepped out of line" and "defied the status quo."

Walker is a Master Electrician and owner of Walker's Electric Company, which offers electrical services in Beaumont. Plaintiffs assert that the conspiracy began around 2004 when members of IBEW asked Walker to join and he refused, at which point he was told that the union would "get him one way or another." Walker then contracted to provide electrical services to BISD, a position that had previously been held by an IBEW member. In April 2008, IBEW filed a complaint against Walker with the Texas Department of Licensing and Registration ("TDLR"), asserting that Walker had obtained his electrician's license through fraud. Although Walker initially contested the matter and continues to assert that IBEW was behind and heavily involved with the investigation, Walker ultimately agreed to pay a fine, relinquish his Master Electrician's license, and re-take the required licensing exam.

Walker asserts that IBEW then conspired with BISD board members to ruin Walker's reputation and business. According to Walker, BISD board members complained that he was making too much money for a minority and was a sloppy businessman. He asserts that BISD personnel sought to ensure that he did not get any other contracts with BISD and imposed onerous record-keeping requirements upon him. Walker, however, continued to work on BISD construction projects.

Having failed to prevent Walker from contracting with BISD, IBEW and BISD allegedly turned to Malcolm Bales, the United States Attorney for the Eastern District of Texas, to get Walker indicted. Walker contends that members of IBEW and BISD worked closely with the

federal government to see that he was indicted on 37 counts of fraud in May 2011. In addition, Walker alleges that Stevens and Brewer—the FBI agents involved in his prosecution—tampered with potential witnesses during his trial, offering bribes to one and threatening two others. Members of the United States Attorney's Office also allegedly leaked information about Walker's case to members of IBEW and BISD. Walker was tried on the fraud counts in December 2011, which resulted in a mistrial. Walker subsequently pleaded guilty to one count of willful failure to pay income taxes. He complains that members of the conspiracy, including members of the press and BISD's Board of Trustees, then relentlessly smeared him by wrongfully stating that he had pleaded guilty to defrauding BISD and that he had agreed to repay BISD for the money that he had stolen. Walker asserts that, although the records of BISD contained altered documents, there was no evidence admitted at trial that Walker or his wife submitted those documents to BISD in connection with receiving payments for projects. In addition, Walker alleges that Rawls, the Assistant United States Attorney assigned to the case, urged BISD to cease doing business with Walker and sent letters to a number of government entities and individuals, falsely informing them that Walker was a thief.

Walker complains that members of the conspiracy continued to engage in a smear campaign against him and that BISD board members and other conspirators repeatedly stated that Walker had admitted to submitting fraudulent invoices. Walker further contends that members of this conspiracy joined with their allies at *The Examiner*, *The Beaumont Enterprise*, and two websites to spread these allegedly unfounded allegations. Unidentified members of the conspiracy also purportedly interfered with Walker's existing contract with BISD and ordered BISD to stop using

his services.[1]  Additionally, Walker alleges that he was prevented from being awarded another BISD contract and that he has lost substantial business from other prospective clients because the district's "Evaluation Matrix" contained false information that he admitted to padding BISD invoices.  Walker claims that the conspiracy has continued and that the United States Attorney's Office conspired with the Jefferson County District Attorney's Office to form a joint task force in order to prosecute Walker in state court.

In Plaintiffs' *Fourth Amended Complaint*, Walker asserts the following claims against the Federal Defendants: defamation, tortious interference with contract, civil conspiracy, and Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy under 18 U.S.C. § 1962(d). Haynes has voluntarily dismissed her claims against the Federal Defendants.  *Plaintiff Haynes' Voluntary Dismissal* (doc. #265).

## II.    Discussion

### A.    12(b)(6) Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  In ruling on such a motion, the Court accepts the factual allegations of the complaint as true, views them in a light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232,

---

[1] The BISD Board of Trustees was replaced by a Board of Managers in 2014.  Walker alleges that they, as members of the conspiracy, improperly terminated his contract with BISD.

236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (noting that at the 12(b)(6) stage, the court must construe all facts in favor of the non-moving party); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 133 S. Ct. 32 (2012). Nonetheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord In re La. Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014); *Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 233 (5th Cir. 2012).

Generally, the Court may not look beyond the four corners of the plaintiff's pleadings. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see Wilson*, 667 F.3d at 595. The Court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994). The Court may also consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *accord Page v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 272, 275 (5th Cir. 2015) (citing *Wilson*, 667 F.3d at 600); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012).

Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563)).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Wilson*, 667 F.3d at 595; *Turner*, 663 F.3d at 775; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Gibson*, 700 F.3d at 233. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410. Generally, at the 12(b)(6) stage, a plaintiff is simply required to inform the defendants of the factual basis of his complaint in order to avoid

dismissal for failure to state a claim. *See Johnson v. City of Shelby*, ___ U.S. ___, ___, 135 S. Ct. 346, 346-47 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)).

B.    Official-Capacity Claims—Rawls

Plaintiffs sued Rawls in both his official and individual capacity.[2]  "Official capacity suits against federal employees are generally treated as suits against the United States." *Todd v. Hawk*, 263 F.3d 162, 162 (5th Cir. 2001) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). Moreover, Plaintiffs have identified no waiver of sovereign immunity.  Accordingly, this claim must be dismissed.

C.    Common-Law Tort Claims—Absolute Immunity

The Federal Defendants assert that they are entitled to absolute immunity from Walker's common-law tort claims under 28 U.S.C. § 2679(b)(1).  Federal employees are absolutely immune from common-law tort claims arising out of acts performed during the course of their official duties.  28 U.S.C. § 2679(b)(1); *Williams v. Brooks*, 945 F.2d 1322, 1327 (5th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 2732-33 (1982)); *Williams v. Collins*, 728 F.2d 721, 727 (5th Cir. 1984); *Claus v. Gyorkey*, 674 F.2d 427, 431 (5th Cir. 1982) ("Absent an allegation of a tort of constitutional magnitude, federal officials are entitled to absolute immunity for ordinary torts committed within the scope of their jobs.").  To establish absolute immunity for a federal employee, "[a]ll that is necessary is that 'the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities . . . .'" *Williams*, 728 F.2d at 727 (quoting *Claus*, 674 F.2d at 431).  Additionally, the federal employee must show "that

---

[2] As the Federal Defendants pointed out, the *Fourth Amended Complaint* actually states in the paragraph pertaining to Rawls that "Bales is being sued individually and in his official capacity." The Court assumes that this is a typographical error.

the action of the official is connected with a 'discretionary function.'" *Id.* (quoting *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir. 1964), *cert. denied*, 380 U.S. 981 (1965)).

In support of the Federal Defendants' motion, the United States has filed certifications of scope of employment on behalf of all three defendants (docs. #211-1, 2, 3), certifying that Rawls, Stevens, and Brewer were acting within the scope of their offices of employment at the time of the incidents alleged in the complaint.  *See* 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4.   This certification "is conclusive for the purposes of removal, . . . but not for the purposes of substituting the United States as a defendant." *Rankin v. United States*, 556 F. App'x 305, 308 (5th Cir. 2014) (citing *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995) (en banc.)). "[W]hether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred." *Id.* (quoting *Garcia*, 62 F.3d at 127).  Nevertheless, "[t]he plaintiff bears the burden of proof to show that the employee's conduct was not within the scope of employment." *Id.* (citing *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995)).

Walker has argued that none of the tort claims against the Federal Defendants pertain to activities they took within the scope of their employment; however, the only acts attributed to them in the complaint pertain to Rawls' role as lead prosecutor in Walker's federal criminal case and Stevens' and Brewer's conduct as FBI agents during their investigation.  Nor does Walker clarify in his response which alleged acts these individuals took outside the scope of their employment. Thus, the Court finds that all three Federal Defendants were acting within the scope of their employment during the incidents asserted in Plaintiffs' *Fourth Amended Complaint* and are entitled to absolute immunity from Walker's common-law tort claims, pursuant to § 2679.

9

D.    Prosecutorial Immunity—Rawls

Rawls further claims he has prosecutorial immunity from Walker's RICO claim. Prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial immunity is based upon the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 422; *Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015) ("This immunity arises from the public interest in shielding prosecutors from liability so they may exercise independent judgment when deciding which suits to bring and how to present them in court."); *Cousin v. Small*, 325 F.3d 627, 635-36 (5th Cir. 2003). At the same time, "the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)); *Culbertson*, 790 F.3d at 627.

Therefore, a prosecutor is protected by absolute immunity when he or she is performing actions associated with the judicial process. *Van de Kamp*, 555 U.S. at 342 (citing *Imbler*, 424 U.S. at 431 n.33); *Culbertson*, 790 F.3d at 627 (citing *Imbler*, U.S. at 431 n.33). Such actions include professional evaluation of the evidence, initiation of prosecution, interviewing witnesses in preparation for trial, and other actions taken throughout the judicial process. *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993); *Brown v. Dove*, 519 F. App'x 237, 238 (5th Cir.

2013); *Hoog-Watson v. Guadalupe Cty., Tex.*, 591 F.3d 431, 438 (5th Cir. 2009) (citations omitted). Immunity also "extends to enforcement of orders resulting from criminal proceedings, such as restitution orders." *Stone v. Fahey*, No. 4:13-CV-332-A, 2013 WL 3356399, at *3 (N.D. Tex. July 3, 2013) (citing *Bazemore v. Junker*, No. 3:10-CV-720-B, 2010 WL 2404311, at *2 (N.D. Tex. May 3, 2010), *adopted*, 2010 WL 2408308 (N.D. Tex. June 15, 2010)); *see Delfeld v. Burnett*, No. 6:11-CV-43, 2013 WL 142425, at *4 (E.D. Tex. Jan. 10, 2013) (granting immunity to prosecutors involved in asset forfeiture).

Nonetheless, absolute immunity may not apply when a prosecutor is engaged in investigative or administrative tasks, instead of acting as an officer of the court. *Van de Kamp*, 555 U.S. at 342; *Culbertson*, 790 F.3d at 627; *Hoog-Watson*, 591 F.3d at 438 ("In other words, prosecutorial immunity protects 'the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial,' but not 'the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'") (quoting *Buckley*, 509 U.S. at 273).

The "determinative factor in analyzing an assertion of absolute prosecutorial immunity is whether or not the prosecutor's activities are activities intimately associated with the judicial phase of the criminal process." *Harris v. Dallas Cty. Dist. Attorney's Office*, 196 F.3d 1256 (5th Cir. 1999) (unpublished table decision) (citing *Kalina*, 522 U.S. at 118). A prosecutor remains entitled to absolute immunity even if he or she acted "maliciously, wantonly[,] or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985)); *accord Rodriguez v. Lewis*, 427 F. App'x 352, 353 (5th Cir. 2011) (citing *Morrison*, 761 F.2d at 248); *see Boyd v. Biggers*, 31, F.3d 279, 285 (5th Cir. 1994) ("This

broad immunity applies even if the prosecutor is accused of knowingly using perjured testimony.") (citations omitted); *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992) (holding state prosecutors were immune from suit based on malicious prosecution); *Williams v. Collins*, 728 F.2d 721, 728 (5th Cir. 1984) ("[A]llegations of malice have no effect on an absolute immunity claim.").

It is apparent on the face of the complaint that all of Rawls' alleged conduct—prosecuting Walker, negotiating with Walker and his attorney regarding a plea agreement, drafting a plea agreement, and communicating with BISD regarding possible restitution and forfeiture—was taken pursuant to his role as a judicial officer. Accordingly, he is entitled to absolute immunity from Walker's RICO conspiracy claim and that claim must be dismissed.

E.      Qualified Immunity—Rawls, Stevens, and Brewer

The Federal Defendants argue that they are entitled to qualified immunity from Walker's RICO claims because Walker has failed to plead an actionable RICO offense. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity may be asserted in a 12(b)(6) motion, provided the official's entitlement to qualified immunity plainly appears based on the facts alleged in the complaint. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Morgan v. Swanson*, 659 F.3d 359, 400 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 289-91 (5th Cir. 2015).

"An official acts within his discretionary authority when he [or she] performs nonministerial acts within the boundaries of his [or her] official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998) (citing *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). "Ministerial acts" refer to those taken pursuant to specific orders or "spelled out in minute detail beforehand." *Tamez*, 118 F.3d at 1091-91; *see Beltran v. City of El Paso*, 367 F.3d 299, 303-04 (5th Cir. 2004).

Qualified immunity is an affirmative defense, requiring the defendant to both plead and establish his or her entitlement to immunity. *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). However, "the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). "Where a defendant pleads qualified immunity and shows [he or she] is a government official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). In this situation, Stevens and Brewer's positions as FBI agents and Rawls' position as an Assistant United States Attorney indisputably involve the exercise of discretion and were not taken pursuant to specific orders or spelled out in minute detail beforehand. Accordingly, the burden shifts to Walker to rebut their entitlement to qualified immunity.[3]

---

[3] In an abundance of caution, although neither party has raised the issue, the Court notes that qualified immunity is not available "in a suit to enjoin future conduct." *Pearson*, 555 U.S. at 242-43 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Walker, however, has not such sought such injunctive relief in this case. Furthermore, his request for the Court to order that "each

Once a defendant raises qualified immunity, the Court engages in a two-part analysis, deciding whether "the defendant's conduct violated a federal right" and "whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred." *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1865 (2014). The Court may consider these prongs in any order. *Ashcroft*, 563 U.S. at 735. The Federal Defendants maintain that Walker has failed to properly plead a RICO claim against them because he has not pleaded (1) the existence of a RICO enterprise or (2) a pattern of racketeering activity.

Walker alleges two substantive RICO violations in the complaint, a violation of § 1962(a) and § 1962(c). To allege a violation under § 1962(a), a plaintiff must show (1) the existence of an enterprise, (2) the defendant's derivation of income from a pattern of racketeering activity, and (3) the use of any part of that income in acquiring an interest in or operating the enterprise. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015). To state a claim of RICO racketeering under 18 U.S.C. § 1962(c), a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern of racketeering activity. *Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139-40 (5th Cir. 1992). "Each concept is a term of art which carries its own inherent requirements of particularity." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989); *see Andrews v. Am. Nat'l Red Cross, Inc.*, 176 F. Supp. 2d 673, 685 (W.D. Tex. 2001), *aff'd*, 44 F.App'x 651 (5th Cir. 2002).

---

member of the Conspiracy issue an unequivocal retraction, correction, and/or clarification as to Walker [sic] relationship with BISD" is not a legally permissible form of relief and appears to relate solely to his defamation claims. *See Kramer v. Thompson*, 947 F.2d 666, 680 (3d Cir. 1991) ("Although the notion of *compelled* retraction occasionally has been advanced in the literature, we have not found a single case in which such a remedy has been awarded.") (emphasis in original). Accordingly, qualified immunity is available to the Federal Defendants.

1.    Existence of a RICO Enterprise

To establish an enterprise, a plaintiff must plead the existence of an entity separate and apart from the pattern of racketeering activity.  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  The entity does not have to be a formal or legal entity, but it must have some sort of hierarchical or consensual decision-making structure, and it must exist for purposes other than just to commit predicate acts.  *In re McCann*, 268 F. App'x 359, 366 (5th Cir. 2008); *United States v. Blesdoe*, 674 F.2d 647, 663 (8th Cir. 1982).  A plaintiff establishes the existence of an enterprise by providing "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Turkette*, 452 U.S. at 583.  For an informal enterprise, known as an association-in-fact enterprise, the "group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc."  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  "Members of the group need not have fixed roles; different members may perform different roles at different times . . . ."  *Id.*  Further, "while the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.  The 'enterprise' is not the 'pattern of racketeering activity.'"  *Id.*  Plaintiffs must "plead specific facts, not mere conclusory allegations which establish the enterprise."  *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).  "[A] RICO plaintiff must plead the specified facts as to each defendant.  It cannot . . . 'lump[ ] together the defendants.'"  *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1988)).

Turning to the complaint, Walker's pleading of the enterprise element of RICO racketeering under § 1962(a) is extraordinarily vague.  He alleges, "IBEW Agents, independently

and in conjunction with individuals employed by BISD and serving on the BISD Board of Trustee[s] and Board of Managers, operated as an enterprise as that term is defined by RICO and case law (the Enterprise)." Similarly, for his claim under § 1962(c), he pleads only, "BISD Agents engaged in an enterprise to further racketeering with IBEW Agents and independently." Walker argues in his response that the complaint pleads facts to show that Reaud directed the enterprise, Michael Neil acted as "enforcer," Tom Neild acted as an official "voice" of BISD, and various news outlets were tasked with spreading false statements about Walker. He further states that Rawls, Stevens, and Brewer "were the ultimate enforcers, scaring African Americans and, when necessary, prosecuting them into compliance." None of these assertions are supported by the *Fourth Amended Complaint*.[4]

2.     Pattern of Racketeering Activity

The Federal Defendants also assert that Walker has not pleaded a pattern of racketeering activity sufficient to support either of his RICO claims. To prove a pattern of racketeering activity, "a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139 (citing 18 U.S.C. § 1961(5); *H.J., Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). Section 1961(1) provides the exclusive list of acts that constitute RICO predicate acts. 18 U.S.C.

---

[4] Walker's pleading that Reaud (who has already been dismissed from this case) is a ringleader of a RICO enterprise is wholly conclusory, comprised of the following statement and devoid of any factual basis:

> Defendant Reaud is one of the ring leaders of the Conspiracy and of the enterprise. He issues directions, instructions, orders, manages individuals and ensures that the enterprise's goal of marginalizing African-Americans in Beaumont is fulfilled. His leadership role included communications with members of the Conspiracy and agreeing to, allowing for, and ensuring implementation of the enterprise's goal to socially and financially destroy African American individuals such as Ms. Haynes and Walker.

As to all of the other purported roles listed by Walker, no such allegations appear in the complaint.

§ 1961(1); *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). The plaintiff must also show that the predicate offenses asserted are related and amount to or pose a threat of continued criminal activity. *Zastrow*, 789 F.3d at 560 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). "To establish continuity, plaintiffs must prove 'continuity of racketeering activity, or its threat.'" *Id.* at 561 (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc.*, 492 U.S. at 241))). The Fifth Circuit has expressly held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown. *Id.* at 561 (quoting *Sawyer*, 90 F.3d at 123). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . ." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242) (holding that plaintiff failed to establish a pattern under RICO when all of the alleged witness intimidation and retaliation asserted occurred within one week and were directed at a single lawsuit and noting that the plaintiff "cannot credibly argue that obstructing justice is part of the defendants' regular way of doing business or that their purported attempts to intimidate him create a threat of long-term racketeering activity").

For his § 1962(a) claim, Walker asserts that the IBEW, along with IBEW 479 and its members, committed the following predicate acts: defamation, tortious interference with a prospective contract, tortious interference with a current contract, "interference with Mr. Walker's lawful business activities," actual or threatened extortion, witness tampering, and witness retaliation. In his § 1962(c) claim, Walker avers that BISD agents "misused official information" in violation of two Texas statutes. Finally, for his § 1962(d) claim, Walker maintains that members of the conspiracy filed false claims with the TDLR, defamed him, tortiously interfered with his current contracts, tortiously interfered with his business, and "other actions described

17

above," which he asserts in his response includes attempted bribery. Out of all of these acts, only extortion, witness tampering, witness retaliation, and attempted bribery are potentially RICO predicate acts.[5]

Extortion under § 1961 means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951. Walker states that he was the victim of attempted extortion when he refused to join the union and threatened that they "would get him one way or another." However, there is no indication that the IBEW took or sought to take property from Walker or that he was induced to give consent to the taking of such property. Therefore, the Court is unable to find that Walker's extortion claim is properly pleaded.

Regarding witness tampering, Walker alleges that the IBEW scared a number of electricians "into saying things to harm him" during the TDLR investigation into the validity of Walker's master electrician's license. Such incidents cannot constitute RICO predicate acts as a matter of law because both the statutes concerning witness tampering and witness retaliation apply solely to federal proceedings, and the TDLR is a state agency in Texas. 18 U.S.C. §§ 1512, 1513. Thus, factual allegations relating to tampering and retaliation regarding witnesses in that proceeding, including allegations concerning Walker's former coworker Mr. Jones, are not actionable under RICO.

---

[5] The filing of spurious complaints with a state agency and Walker's civil tort claims are not RICO predicate acts. As to the assertion of "official oppression" and "misusing official information," both claims are ordinarily misdemeanors under Texas law and do not involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, obscenity, or controlled substances. *See* TEX. PEN. CODE §§ 39.03, 39.06 (West 2015). Thus, they also are not RICO predicate acts. *See* 18 U.S.C. § 1961(1)(A).

Second, Walker asserts that witness tampering and retaliation occurred when Stevens convinced her ex-husband, Luke Stevens ("Luke"), not to inform Walker's defense counsel or the judge presiding over Walker's criminal trial about "leaks" allegedly coming from the United States Attorney's office.  Walker has included an affidavit from Luke stating that Stevens threatened to take his children away and otherwise make him suffer if he came forward with information about the leaks.  Luke further wrote that, after he spoke with Rawls about the leaks, the FBI allowed Stevens to work shorter hours and that she used the time to keep him away from his children. This incident is sufficient to constitute an instance of witness tampering and retaliation for pleading purposes.

Bribery is governed by 18 U.S.C. § 201(b)(3) and occurs when a person:

> directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom . . . .

18 U.S.C. § 201(b)(3).  Walker pleads Stevens and Brewer offered to make James Brown's ("Brown") child support obligations "disappear" if Brown would falsely testify against Walker. Because Brown was allegedly promised a benefit in exchange for his testimony as a witness against Walker, the court finds that this is a sufficiently pleaded instance of attempted bribery and witness tampering.

Therefore, in total, Walker has pleaded four possible predicate acts—alleged witness tampering and retaliation against Luke and the attempted bribery and witness tampering involving Brown.  Walker has not, however, sufficiently pleaded that these acts constitute a "pattern."  All of the predicate acts occurred during a relatively brief period of time in the context of Walker's

criminal trial for fraud.  Further, Walker's criminal prosecution ended with a plea agreement between Walker and the government.  Walker has not asserted any facts to support an argument that there exists a threat of continuing criminal activity.  Therefore, Walker has failed to plead a pattern of racketeering activity essential for his substantive RICO claims.

Accordingly, because Walker has failed to plead a pattern of racketeering activity or the existence of a RICO enterprise necessary to support a substantive RICO offense, he has failed to state a claim of RICO conspiracy against the Federal Defendants, and they are entitled to qualified immunity.

## III.    Conclusion and Recommendation

Based on the findings and legal reasoning stated herein, the undersigned recommends that the Court **GRANT** the Federal Defendants' *Motion to Dismiss for Lack of Subject-Matter Jurisdiction, for Failure to State a Claim, and for Insufficient Service of Process* (doc. #211). This recommended dismissal is based on the extent to which these individuals are entitled to absolute, qualified, official, and prosecutorial immunities, as previously laid out in this order. Because this recommendation disposes of all Plaintiffs' remaining claims against Rawls, Stevens, and Brewer, the Court declines to rule on the Federal Defendants' numerous other grounds for dismissal.

## IV.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within fourteen (14) days of service.  Failure to file specific, written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report shall bar an aggrieved party from *de*

*novo* review by the District Judge of the proposed findings, conclusions and  recommendations, and from  appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1).


**SIGNED this the 6th day of March, 2017.**


_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE